```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
DUCKHORN WINE COMPANY, a California
Corporation,

                    Plaintiff,
                                                MEMORANDUM & ORDER
        -against-                               13-CV-1642(JS)(GRB)

DUCK WALK VINEYARDS, INC., a New York
Corporation,

                    Defendant.
----------------------------------------X
```

APPEARANCES
For Plaintiff:      Gayle Rosenstein Klein, Esq.
                    John C. Briody, Esq.
                    McKool Smith PC
                    One Bryant Park, 47th Floor
                    New York, NY 10036

                    Henry C. Bunsow, Esq.
                    Jeffrey D. Chen, Esq.
                    Robin K. Curtis, Esq.
                    Bunsow De Mory Smith & Allison LLP
                    351 California Street, Suite 200
                    San Francisco, CA 94104

For Defendant:      Linda S. Agnew, Esq.
                    Steven R. Schlesinger, Esq.
                    Jaspan Schlesinger LLP
                    300 Garden City Plaza
                    Garden City, NY 11530

SEYBERT, District Judge:

        Plaintiff Duckhorn Wine Company ("Plaintiff" or "Duckhorn") commenced this action against Duck Walk Vineyards, Inc. ("Defendant" or "Duck Walk"), alleging that Duck Walk breached a settlement agreement between the parties that resolved a prior trademark infringement action between them. Duck Walk moves to

dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 7.) For the following reasons, Duck Walk's motion to dismiss is DENIED.

BACKGROUND[1]

Duckhorn is a California vineyard and winemaker with its principal place of business in Saint Helena, California. (Compl. ¶ 5.) Duck Walk is a New York vineyard and winemaker with its principal place of business in Water Mill, New York. (Compl. ¶ 6.) As their names might suggest, both wineries use duck-related words and imagery in connection with the marketing and distribution of their wine products.

This action stems from a prior trademark infringement action between Duckhorn and Duck Walk brought in this Court in 2001. (Compl. ¶¶ 1, 15; see Duck Walk Vineyards, Inc. v. St. Helena Wine Co., d/b/a Duckhorn Vineyards, No. 01-CV-4896 (E.D.N.Y.).) In September 2003, the parties entered into a Mutual Release and Settlement Agreement (the "Settlement Agreement") that resolved that action. (Compl. Ex. 1.) The Settlement Agreement places certain restrictions and requirements on Duck Walk's ability to produce and distribute wines with duck images on the labels. (See generally Compl. Ex. 1.) In this action, Duckhorn

---

[1] The following facts are taken from the Complaint and are presumed to be true for the purposes of this Memorandum and Order.

2

alleges that Duck Walk breached Paragraphs 2 and 3 of the Settlement Agreement.

Paragraph 2 of the Settlement Agreement restricts the production volume and geographic distribution of Duck Walk wines that have duck images on the labels. It states in relevant part:

> Duck Walk Vineyards, Inc. shall not in any one calendar year produce and/or bottle and/or authorize production and/or bottling of more than 84,000 gallons (the "Gross Production") where the word "Duck" and/or the image or picture of ducks will be employed on the label except as part of the corporate name "Duck Walk Vineyards, Inc." . . . . Duck Walk Vineyards, Inc. shall not sell more than 50% of the annual Gross Production outside of the States of New York, New Jersey and Connecticut, or sell to restaurants, or others, where it will be served or resold outside of the States of New York, New Jersey and Connecticut.

(Compl. Ex. 1 ¶ 2.) Duckhorn alleges that Duck Walk breached this provision "[b]y selling more than 50% of Gross Production outside of New York, New Jersey, and Connecticut . . . ." (Compl. ¶ 54.)

Paragraph 3 of the Settlement Agreement imposes certain restrictions and requirements on the actual content of Duck Walk's labels. Paragraph 3 first requires that the front label of any Duck Walk wine containing duck images also contain language identifying Duck Walk's geographic location on Long Island, New York ("Prefatory Language"):

> The words "The Hamptons", "South Hamptons", "South Fork" and/or "Long Island" or other geographic designation of like import as may

3

>           be approved by BATF[2] (the prefatory language)
>           shall be added on the front label of all of
>           the Gross Production. Such words will be
>           added to the front label immediately above the
>           words "Duck Walk" or other use of the word
>           "Duck" in size and font lettering reasonably
>           legible to person looking at the front label,
>           and in accordance with approval by BATF.

(Compl. Ex. 1 ¶ 3 (footnote added).)

Duckhorn alleges that Duck Walk breached this provision by failing to place Prefatory Language on the front labels of its cabernet sauvignon, merlot, and brut sparkling wines. (Compl. ¶ 41.) In support of this allegation, the Complaint attaches Certifications of Label Approval ("COLAs") issued by the the BATF in 2009 for each of the wines at issue.[3] (Compl. Exs. 2-4.) Affixed to the COLAs are the following labels:

---

[2] "BATF" is the acronym for the Bureau of Alcohol, Tobacco, Firearms and Explosives.

[3] A COLA is a certification issued by the BATF "that authorizes the bottling or packing of wine . . . for introduction into commerce" on the condition that the wine "bears labels identical to the labels affixed to the face of the certificate . . . ." 27 C.F.R. § 13.11.



The labels on the left depict a silhouette of two blue ducks, and the labels on the right contain the product barcode, government warnings, and the alcohol percentage. Duckhorn alleges that shortly after receiving the COLAs for these labels, Duck Walk began using the labels to market and sell its wine in interstate

5

commerce, including by displaying on its website the labels on the left as the front labels. (Compl ¶¶ 32-40.) Duckhorn alleges that Duck Walk's use of these labels constitutes a breach of the Settlement Agreement because the labels on the left, which Duckhorn alleges are the "front labels" within the meaning of Paragraph 3, fail to contain the requisite Prefatory Language. (Compl. ¶¶ 28-37.)

Paragraph 3 next restricts Duck Walk's use of duck images to certain approved images or images similar to the approved images. (Compl. Ex. 1 ¶ 3 ("The picture or logo of 'ducks' on the Duck Walk labels shall be the picture or depiction, or such similar pictures or depictions, as shown on the labels attached hereto as Exhibit A.").) Duckhorn alleges that Duck Walk breached this provision because the image of the blue ducks displayed on the labels above is not similar to any of the approved images contained in Exhibit A. (Compl. ¶ 42.)

On December 7, 2012, Duckhorn requested that Duck Walk remedy these alleged breaches. (Compl. ¶ 43.) Shortly after receiving this request, Duck Walk switched the images on its website to display the reverse label of its merlot and cabernet sauvignon wine bottles. (Compl. ¶ 43, Exs. 11-12.)

Duck Walk has moved to dismiss the Complaint for failure to state a claim, arguing that it has not breached any provision

6

of the Settlement Agreement. This motion is currently pending before the Court.

## DISCUSSION

The Court will first set forth the legal standard on a Rule 12(b)(6) motion to dismiss for failure to state a claim before turning to Duck Walk's motion specifically.

I.  Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

The Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue

Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

II. Duck Walk's Motion to Dismiss

As noted, Duckhorn claims that Duck Walk breached the Settlement Agreement in three ways: (1) by failing to include Prefatory Language on the front labels on its cabernet sauvignon, merlot, and brut sparkling wines in violation of Paragraph 3; (2) by utilizing a duck image on its labels that is not similar to the duck images approved for use under the Settlement Agreement, also in violation of Paragraph 3; and (3) by selling its wines in excess of the production and distribution limitations set forth in Paragraph 2.

Duck Walk first moves to dismiss the claims that it failed to comply with the labeling requirements of Paragraph 3, arguing that the COLAs attached to the Complaint demonstrate that Duck Walk did in fact comply with Paragraph 3. The Court will first address Duckhorn's claim that Duck Walk failed to include

Prefatory Language on the front labels of its wines.  For ease of reference, the relevant portion of Paragraph 3 states:

> The words "The Hamptons", "South Hamptons", "South Fork" and/or "Long Island" or other geographic designation of like import as may be approved by BATF (the prefatory language) shall be added on the front label of all of the Gross Production.  Such words will be added to the front label immediately above the words "Duck Walk" or other use of the word "Duck" in size and font lettering reasonably legible to persons looking at the front label, and in accordance with approval by BATF.

(Compl. Ex. 1 ¶ 3.)

Duck Walk argues that "[t]he clear and unambiguous language of Paragraph 3 makes [Duck Walk's] compliance expressly contingent upon approval of the BATF."  (Duck Walk's Br. to Dismiss, Docket Entry 9, at 4.)  Because, according to Duck Walk, "[t]he BATF considers the 'front label' of the wine bottles at issue to be that containing the alcohol percentage, government warnings, and product bar code," Duck Walk complied with Paragraph 3 by placing Prefatory Language on this label.  (Duck Walk's Br. to Dismiss at 4.)  In support of this argument, Duck Walk points to the BATF's notations on the COLAs that this label "must appear on the front of the container."  (Duck Walk's Br. to Dismiss at 4-5.)  Stated another way, Duck Walk contends that "[i]nasmuch as BATF designated its understanding of 'front label,' [Duck Walk] included the required prefatory language in a manner designed to obtain BATF approval, and thereby comply with Paragraph 3."  (Duck

9

Walk's Br. to Dismiss at 5.) As discussed below, this argument is patently meritless.

"The primary objective in contract interpretation is to give effect to the intent of the contracting parties 'as revealed by the language they chose to use.'" Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993) (quoting Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992)). A court may grant a motion to dismiss a contract claim "only where the language of a contract is clear and unambiguous." Readick v. Avis Budget Grp., Inc., No. 12-CV-3988, 2013 WL 3388225, at *4 (S.D.N.Y. July 3, 2013) (citation omitted). "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Sayers, 7 F.3d at 1095 (internal quotation marks and citation omitted). On the other hand, "[n]o ambiguity exists when contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Id. (second alteration in original) (internal quotation marks and citation omitted).

Paragraph 3 is not capable of the meaning Duck Walk suggests. Paragraph 3 does not provide that Duck Walk may comply with the requirement that it place Prefatory Language on the front label of its wine by simply obtaining BATF approval. To the contrary, a plausible and extremely reasonable reading of Paragraph 3 is the one that Duckhorn supplies: that Prefatory Language must be placed on the front label immediately above any use of "Duck Walk" or the word "duck" <u>and</u> the size and font of the Prefatory Language must be reasonably legible to persons looking at the front label and must be "in accordance with approval by BATF." If the Court accepted Duck Walk's reading, then the "front label" under Paragraph 3 could be a label placed anywhere on the wine bottle as long as the label is approved by the BATF. This cannot be what the parties intended. Duckhorn alleges that the "front label" under Paragraph 3 is "the larger, more colorful, dramatic and/or eye catching label" that will be "displayed to the wine consuming public . . . ." (Compl. ¶ 34.) As shown in the COLAs attached to the Complaint, this label for each of the wines at issue lacks the requisite Prefatory Language. Duckhorn has therefore stated a plausible claim for breach of contract. Accordingly, Duck Walk's motion to dismiss Duckhorn's claim that Duck Walk breached the Settlement Agreement by failing to place Prefatory Language on the front labels is DENIED.

Duckhorn next alleges that Duck Walk breached Paragraph 3 of the Settlement Agreement because the blue duck silhouette that Duck Walk placed on its labels is not approved for use under the Settlement Agreement. For ease of reference, the relevant portion of Paragraph 3 states:

> The picture or logo of "ducks" on the Duck Walk labels shall be the picture or depiction, or such similar pictures or depictions, as shown on the labels attached hereto as Exhibit A.

(Compl. Ex. 1 ¶ 3.) Exhibit A of the Settlement Agreement includes seven images of ducks that are approved for use on Duck Walk's labels. (Compl. Ex. 1 at Ex A.) The images are of the same basic depiction of nine or more white ducks in the foreground with numerous other ducks in the background. Representative samples of the images in Exhibit A are included below:

  

This is an image of the blue duck silhouette that Duck Walk used on its labels:



(See Compl. Exs. 2-4.) Duckhorn alleges that Duck Walk's use of the blue duck silhouette constitutes a breach of the Settlement Agreement because it is not similar to any of the approved images set forth in Exhibit A.

Duck Walk moves to dismiss this claim, arguing that the blue duck image does not violate Paragraph 3 because: (1) "[t]here is no specific restriction on the color or amount of ducks that [Duck Walk] may permissibly use," (2) Duck Walk "has simply reduced the number of ducks featured and colored them blue," and (3) that "[i]t is uncontested that the duck is the same or similar type of duck that appears in the Approved Images." (Duck Walk's Br. to Dismiss at 7.) This argument is absurd and the Court summarily rejects it. That the words of the Settlement Agreement do not state a specific restriction on the number or color of ducks is irrelevant. The clear language of the Settlement Agreement permits Duck Walk to use only one of the approved images in Exhibit A or "such similar pictures or depictions." (Compl. Ex. 1 ¶ 3.) A

13

quick visual inspection of the images demonstrates that the only thing similar about these images is that they contain ducks. It is readily apparent that the images are starkly different. The blue duck silhouette consists of two ducks set in a blue silhouette. The ducks appear to be standing still, facing the left, and they lack detail. In contrast, the approved images in Exhibit A contain nine or more white ducks. These white ducks are considerably detailed; they have eyes, beaks, and feathers. The white ducks appear to be walking from left to right across the image. Given these visual disparities, Duckhorn clearly has alleged a plausible claim that Duck Walk breached the Settlement Agreement by using the blue duck silhouette. Accordingly, Duck Walk's motion to dismiss Duckhorn's claim that Duck Walk used an unapproved image on its wine labels is DENIED.

Finally, Duckhorn alleges that Duck Walk breached the Settlement Agreement by selling its wines in violation of the restrictions on production volume and geographic distribution set forth in Paragraph 2 of the Settlement Agreement. Again, for ease of reference, Paragraph 2 states in relevant part:

> Duck Walk Vineyards, Inc. shall not in any one calendar year produce and/or bottle and/or authorize production and/or bottling of more than 84,000 gallons (the "Gross Production") where the word "Duck" and/or the image or picture of ducks will be employed on the label except as part of the corporate name "Duck Walk Vineyards, Inc." . . . . Duck Walk Vineyards, Inc. shall not sell more than 50%

> of the annual Gross Production outside of the States of New York, New Jersey and Connecticut, or sell to restaurants, or others, where it will be served or resold outside of the States of New York, New Jersey and Connecticut.

(Compl. Ex. 1 ¶ 2.) Duckhorn alleges that Duck Walk breached this provision "[b]y selling more than 50% of Gross Production outside of New York, New Jersey, and Connecticut . . . ." (Compl. ¶ 54.)

Duck Walk moves to dismiss this claim, contending that it has not sold more than 50% of its annual Gross Production outside of New York, New Jersey, and Connecticut. (Duck Walk's Br. to Dismiss at 7-9.) In support of this contention, Duck Walk submits a declaration from its chief executive officer, which introduces numerous factual allegations and documents outside of the Complaint. (See Krejci Decl., Docket Entry 8.) However, when deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). Thus, the Court may not consider these facts and documents without converting Duck Walk's motion to dismiss into one for summary judgment, which, as discussed below, would be inappropriate at this juncture.

Federal Rule of Civil Procedure 12(d) does permit a court to convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court . . . ." FED. R. CIV. P. 12(d). However, a court is not required "to convert a 12(b)(6) motion to one for summary judgment in every case in which a defendant seeks to rely on matters outside the complaint in support of a 12(b)(6) motion; it may, at its discretion, exclude the extraneous material and construe the motion as one under Rule 12(b)(6)." United States v. Int'l Longshoremen's Ass'n, 518 F. Supp. 2d 422, 450 (E.D.N.Y. 2007).

Here, Duck Walk has submitted a declaration and documents that present factual questions going to the weight of the evidence in support of Duckhorn's allegations. However, the resolution of a factual dispute, "in the absence of any discovery or evidentiary hearing, is not appropriate on a motion to dismiss." In re Bear Stearns Cos. Secs., Derivative, & ERISA Litig., 763 F. Supp. 2d 423, 502-03 (S.D.N.Y. 2011); see Alston v. 1749-1753 First Ave. Garage Corp., No. 12-CV-2676, 2013 WL 3340484, at *3 (E.D.N.Y. July 2, 2013) (declining to convert motion to dismiss into one for summary judgment based on affidavits from defendant corporation's president because the arguments presented by defendant in favor of dismissal were "fact-intensive" and affidavits "from key witnesses are not equal replacements for depositions and other discovery");

16

Novie v. Vill. of Montebello, No. 10-CV-9436, 2012 WL 3542222, at *9 (S.D.N.Y. Aug. 16, 2012) ("[I]t is improper for a court to consider declarations and affidavits on a motion to dismiss.") (collecting cases). Accordingly, the Court declines to convert Duck Walk's motion into one for summary judgment, and Duck Walk's motion to dismiss Duckhorn's claim that Duck Walk breached Paragraph 2 of the Settlement Agreement is therefore DENIED.

## CONCLUSION

For the foregoing reasons, Duck Walk's motion to dismiss the Complaint is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   June __9__, 2014
         Central Islip, New York